**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOEL SHARENOW,<br><br>        Plaintiff - Appellant,<br><br> and<br><br>SHELDON PITTLEMAN, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>  v.<br><br>IMPAC MORTGAGE HOLDINGS, INC.; JOSEPH R. TOMKINSON; WILLIAM S. ASHMORE; GRETCHEN D. VERDUGO,<br><br>        Defendants - Appellees. | No. 09-55533<br><br>D.C. No. 8:07-cv-00970-AG-MLG<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Andrew J. Guilford, District Judge, Presiding

Argued and Submitted June 7, 2010
Pasadena, California

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before:  D.W. NELSON and GOULD, Circuit Judges, and DOWD, Senior District Judge.[**]

Lead Plaintiff Joel Sharenow appeals the district court's dismissal of his Third Amended Complaint against Impac Mortgage Holdings, Inc. and two of its officers alleging securities fraud in violation of sections 10(b) and 20(a) of the Securities Exchange Act, 15 U.S.C. §§ 78j, 78t, and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.  We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

To plead scienter adequately under the Private Securities Litigation Reform Act, Sharenow must "state with particularity facts giving rise to a strong inference" that the defendants intentionally or recklessly made false statements.  *In re Daou Sys., Inc.*, 411 F.3d 1006, 1014–15 (9th Cir. 2005).  Sharenow alleges that Impac's executives committed fraud by representing that Impac's underwriting guidelines were strict and that its loans were high-quality, while in fact the executives were overriding the underwriting guidelines to originate and purchase poor-quality loans.  After reviewing the complaint and the documents incorporated by it, however, we conclude that Sharenow stated insufficient facts to create a strong

[**] The Honorable David D. Dowd, Jr., Senior United States District Judge for the Northern District of Ohio, sitting by designation.

2

inference of scienter.[1] *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (listing the evidence properly considered in the scienter analysis).

We first consider the allegations individually and conclude that none of them, standing alone, creates a strong inference of scienter. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 992 (9th Cir. 2009). Sharenow uses the statements of five former employees to allege scienter. Those employees claim that Impac's officers received reports and spreadsheets detailing the poor-quality loans, and further that the officers themselves approved loans that did not meet the underwriting guidelines by overriding the underwriters' recommendations. The former employees' allegations, however, consist of general allegations of mismanagement that omit the necessary details of when or how the underwriting guidelines were ignored. No specific underwriting guidelines are discussed, and the alleged violations are not sufficiently tied to the class period. *See id.* at 996–1000. The closest Sharenow comes to alleging scienter is an allegation that a

---

[1] The parties agree that we may take judicial notice of the recent mortgage-industry downturn under Federal Rule of Evidence 201, but they dispute which, if any, inferences from the downturn may properly be applied to the scienter analysis. Plaintiffs urge that actions of Impac were a contributing cause of the downturn, whereas defendants urge that the downturn gives an explanation for what occurred that is exculpatory. Because we conclude that Sharenow insufficiently alleges scienter regardless of the economic downturn, we need not resolve the issue whether judicial notice should here be taken on the economic downturn or any causes of it.

former employee heard that Impac's President overrode an underwriter's recommendation to reject a bulk loan purchase in April or May 2006 and caused the loan pool to be purchased. There is no allegation that this override necessarily occurred during the class period and in any event Sharenow provides no specific information about *how* the underwriting guidelines were violated. Even crediting this allegation in full, it is "not so indicative of fraudulent intent that it carries the weight of the entire . . . complaint." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1069 (9th Cir. 2008). The remainder of Sharenow's scienter allegations suffer from similar problems. Sharenow claims that Impac experienced strained relations with its outside auditor in Spring 2005, but the class period ran from May 10, 2006 to August 6, 2007, and Sharenow offers no reason why alleged friction with the auditor a year earlier bears on scienter during the relevant time period. Similarly, Sharenow points to an SEC inquiry into Impac's operations in May 2008, but he does not claim that the SEC found anything wrong at Impac. In sum, Sharenow's allegations do not describe any underwriting-guideline violations or tie those violations to the class period with the "great detail" required to give rise to a strong inference of scienter. *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 983–84 (9th Cir. 1999).

We next view the complaint as a whole to see whether all of Sharenow's allegations, considered together, give rise to a strong inference of scienter, per the holistic analysis required by *Tellabs*. *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008). So viewed, however, the inference that the defendants intended to deceive investors is still less compelling than a competing inference of non-fraudulent intent. *See Tellabs*, 551 U.S. at 314. The decrease in Impac's loan production and market share coincided with its public commitment to tighten its underwriting guidelines. Moreover, there is no evidence that the officers had any profit motive that might tempt them to mislead investors.[2] *See id*. at 325. Finally, although the core-operations inference is properly considered in the holistic analysis, *South Ferry*, 542 F.3d at 784, Sharenow does not persuasively explain how that inference transforms the former employees' statements into sufficient

---

[2] We note that the allegations of the complaint do not suggest that key officers of Impac, defendants herein, personally profited by making stock sales at high prices after relevant information was fraudulently omitted from their statements to the investing public. In a case where insider stock sales are high in a relevant period of alleged nondisclosure, this can weigh heavily in the scienter analysis. *Tellabs*, 551 U.S. at 325. Plaintiffs allege, however, that defendants were motivated more by wanting to keep the company going to get large salaries than by making sales of their modest stock holdings, so that no negative inference should be drawn from the absence of insider trading. Plaintiffs' point on this issue has a persuasive logic, *see id.* (holding that an apparent lack of pecuniary motive "is not fatal" to a securities fraud claim), and we do not draw a negative inference from the absence of stock sales that benefitted the defendant chief executive officer and chairman of the board.

5

allegations. At bottom, a non-fraudulent inference—namely that Impac's efforts to minimize risk exposure in the mortgage industry came too late to avoid large losses—is more compelling than an inference that Impac's officers intended to defraud investors by falsely claiming to tighten its underwriting guidelines. We therefore affirm the dismissal of the complaint.

Because Sharenow did not adequately plead a primary violation of section 10(b) of the Securities Act, his section 20(a) claim was properly dismissed. *Zucco*, 552 F.3d at 990. Finally, the district court did not abuse its discretion in dismissing the Third Amended Complaint with prejudice on the grounds that further amendment would have been futile. *See Metzler*, 540 F.3d at 1072.

**AFFIRMED.**